UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT CONNER,<br><br>Plaintiff,<br><br>v.<br><br>K. BROGAN Officer, Mr.,<br>SURGUY Sergeant, Mr.,<br><br>Defendants. | ) | No. 1:24-cv-02097-TWP-MJD |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Kevin Brogan (Officer Brogan) and Jack Surguy's ("Sgt. Surguy") (together the "Defendants") Motion for Summary Judgment. (Dkt. 46). Plaintiff Robert Conner (Mr. Conner) was an Indiana Department of Correction ("IDOC") inmate housed at Pendleton Correctional Facility ("Pendleton"). He alleges that while he was at Pendleton, the Defendants allowed inmates to steal his property in retaliation for submitting grievances against staff. (Dkts. 1, 19). Mr. Conner proceeds with claims of First Amendment retaliation claim and state law negligence against the Defendants. For the reasons explained below, summary judgment is **granted**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir.

2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017) (internal citation and quotation marks omitted).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Conner and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. Parties and Claims

In 2023, Mr. Conner was an IDOC inmate incarcerated at Pendleton where the events that gave rise to this action took place. (Dkt. 1). In 2023 Defendants were employed at Pendleton; Sgt. Surguy was a Correctional Sergeant and Officer Brohan a Correctional Officer. (Dkts. 47-1 at 1; 47-2 at 2). Mr. Conner's complaint contains the following allegations.

On August 12, 2023, Mr. Conner was placed into segregation and not allowed to pack his belongings or witness the inventory or movement of his property. (Dkt. 1 at 3). Sgt. Surguy and Officer Brohan told him that they were going to let other inmates take his property because he had previously filed grievances against staff. *Id*. As a result, Mr. Conner lost a lot of his property. *Id*.

In his deposition, Mr. Conner stated that the protected activity that formed the basis of his First Amendment claim was that he requested adequate healthcare and filed grievances against correctional staff. (Dkt. 47-4 at 12-13).

**B. Offender Grievance Process**

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the IDOC's policy that dictates how a prisoner can exhaust his administrative remedies using the grievance procedure. (Dkt. 47-3 at 2). The grievance process consisted of three steps: (1) submitting a formal grievance to the grievance specialist; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id*.

Members of correctional staff are generally unaware of grievances unless the grievance specialist contacts them to provide a response. (Dkt. 47-1 at 1; Dkt. 47-2 at 1; Dkt. 47-3 at 3). Staff members are not asked to assist with grievance appeals unless they are selected as the Warden's designee, and neither Defendant has ever been selected as the designee. (Dkt. 47-3 at 3).

Correctional staff like Sgt. Surguy and Officer Brohan may assist inmates with filing grievances if an inmate hands a completed grievance form to them by placing the form in the unit box. (Dkt. 47-1 at 2; Dkt. 47-2 at 1). The contents of the box are picked up by the unit's caseworker, who sends the grievances to the grievance specialist. (Dkt. 47-1 at 2; Dkt. 47-2 at 2). Grievance

appeal forms can only be requested from the grievance specialist; Sgt. Surguy and Officer Brohan do not issue grievance appeal forms. (Dkt. 47-1 at 2; Dkt. 47-2 at 2).

Sgt. Surguy and Officer Brohan are unaware of any grievances filed by Mr. Conner against themselves or other staff before the events of August 12, 2023. *Id*. They are aware of the grievances submitted by Mr. Conner after the August 12 incident, naming them and describing the allegations proceeding in this lawsuit. *Id*.

**a. Mr. Conner's grievances prior to August 12, 2023**

In 2023 at Pendleton, Mr. Conner submitted 13 grievances before the August 12, 2023, incident. (Dkt. 47-3 at 4; Dkt. 47-5; Dkts. 47-6 through 47-18). None of these grievances mention Officer Brogan or Sgt. Surguy. *Id*. Instead, the grievances included complaints regarding Mr. Conner's medical and mental health care, legal mail, staff conduct, and related complaints. *Id*.

The grievance filed closest to the date of the incident in this case was grievance no. 23-147933, submitted by Mr. Conner on April 15, 2023, about an indecent that happened on April 14. (Dkt. 47-18 at 2). This grievance related to the water at the facility being unsafe and that Centurion staff were ignoring his requests for healthcare relating to this issue. *Id*.

At his deposition, Mr. Conner testified that the Defendants said the following to him about his grievances: Officer Brogan called him a snitch, a rat, and a check-in and that Sgt. Surguy told him to kill himself and called him a check-in. (Dkt. 47-4 at 97-98). He explained a check-in is someone who requests suicide prevention. *Id*. at 98. Sgt. Surguy and Officer Brohan dispute that they made these comments or were aware of any of Mr. Conner's grievances until those filed after the events of August 12. (Dkt. 47-1 at 2; Dkt. 47-2 at 2).

### C. Events of August 12, 2023, and Plaintiff's Property

#### a. Inmate Property in Disciplinary Situations

When an inmate is placed in disciplinary restrictive housing, his property is secured and packed. (Dkt. 47-1 at 4). Typically, an inmate would sign his inventory sheet but if he is not present for disciplinary reasons or refuses to sign then another staff member signs the sheet. *Id*. at 3-4. The officer assigned to the unit usually packs the property, but it could be another staff member. *Id*. at 4. The inmate who packs the property fills out the inventory sheet. *Id*. Inmate property is stored in containers, as required by policy. *Id*.

Generally, prisoners are responsible for maintaining their property while they are in their cells.( Dkt. 47-4 at 31). When property is moved, it must be packed and stored in containers for security. (Dkt. 47-1 at 4). Oversized items are not required to be stored in containers either while in a cell or in storage. *Id*.

Inmates are subject to property restrictions depending on their housing unit. *Id*. Inmates in disciplinary restrictive housing are subject to heavier property restrictions. *Id*. When inmates are moved to disciplinary restrictive housing, their allowed property is separated into a "care package." *Id.* The care package contains clothing, basic hygiene items, and other approved items. *Id*. Legal materials are limited to one box, so any excess legal materials are sent to the property room. *Id.* Art supplies and many personal commissary items are not allowed in disciplinary restrictive housing and would also be sent to the property room. *Id.* Once the care package is separated, the property is taken to the property room for storage until the inmate moves out of disciplinary restrictive housing and the property is returned to him. *Id.* at 5.

**b. R Cellhouse**

On August 12,2023 Mr. Conner was housed in R cellhouse, a restrictive housing unit. (Dkt. 47-1 at 2; Dkt. 47-4 at 19). Sgt. Surguy and Officer Brohan were both assigned to work in R cellhouse. (Dkt. 47-1 at 2; Dkt. 47-2 at 2). In R cellhouse, control of the unit is divided between the two officers working the unit. (Dkt. 47-1 at 2). One officer is in charge of ranges 1 and 3, and the other officer is in charge of ranges 2 and 4. *Id*. Cell doors are opened from the control office. *Id*. The cell doors are manually opened with a crank. *Id*. If a cell needs to be opened on a range, the officer working the opposite ranges opens the cell door. *Id*. For example, if a cell in range 1 needs to be opened, the officer in charge of ranges 2 and 4 opens it. *Id*. Sgt. Surguy was working the 1 and 3 ranges; Officer Brogan was working the 2 and 4 ranges. *Id*.

**c. August 12 altercation**

On August 12, 2023 certain cells in R cellhouse were opened to allow several inmates out to shower, including Mr. Conner. (Dkt. 47-1 at 3). Inmate Eric Duff ("Mr. Duff") was out of his cell, working as unit detail on the unit to clean the range. *Id*. After Mr. Conner left his cell, Mr. Duff spit on him. (Dkt. 47-4 at 20-21). Mr. Conner then hit Mr. Duff with his laundry bag, which had a fan motor in it. (Dkt. 47-1 at 3; Dkt. 47-19). Defendants testified that they did not in any way instigate the fight, direct Mr. Duff to spit on Mr. Conner, or direct any other inmate to antagonize Mr. Conner. (Dkt. 47-1 at 3; Dkt. 47-2 at 3).

In response to Mr. Duff's aggression, Officer Brogan called for first responders. (Dkt. 47-2 at 3; Dkt. 47-19). Following the altercation, Mr. Conner was moved to disciplinary restrictive housing by the first responders and taken to G cellhouse. (Dkt. 47-1 at 3; Dkt. 47-2 at 3; Dkt. 47-4 at 26-27; Dkt. 47-19). Because he was moved for disciplinary reasons, Mr. Conner was not

allowed to pack his property and was not present when his property was packed up. (Dkt. 47-1 at 3; Dkt. 47-2 at 3; Dkt. 47-4 at 29).

Sgt. Surguy packed Mr. Conner's property as he was assigned to the unit. (Dkt. 47-1 at 3, 5). Sgt. Surguy always ensures when he packs an inmate's property that the cell is secured. *Id*. at 5. Officer Brogan opened the cell to allow Sgt. Surguy to pack the property. *Id*. Sgt. Surguy separated part of Mr. Conner's property into the care package that would go to G cellhouse while he served time for conduct. *Id*. The rest of the property was packed separately to go to the property room. *Id*. Once Sgt. Surguy exited the cell, Officer Brogan closed it behind him. *Id*. Sgt. Surguy delivered the property to the property room, and the care package was sent to G cellhouse. *Id*.

Sgt. Surguy and Officer Brogan did not allow any inmates into the cell while the property was being packed, did not see any other inmates enter the cell or take property, and did not instruct any other inmate to take Mr. Conner's property. (Dkt. 47-1 at 6; Dkt. 47-2 at 5-6).

Mr. Conner promptly filed a tort claim alleging that his property was lost because Defendants mishandled it. (Dkt. 1-1 at 2; Dkt. 47-4 at 61-66). In his notice of tort claim he alleges that he lost legal papers, grievances, privileged paperwork, and art supplies valued at $316.00 along with commissary items valued at $217.00. (Dkt. 1-1 at 2). Mr. Conner also had legal work damaged, and lost items including food, paperwork, hygiene, clothing, sentimental items such as awards he won from various tournaments, and other commissary items. (Dkt. 47-4 at 25-26).

## III. <u>DISCUSSION</u>

### A. Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants'

decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that Mr. Conner engaged in protected First Amendment activity by filing grievances. They argue that Mr. Conner cannot establish that the grievances he filed were a motivating factor in Defendants' conduct on August 12, 2023.

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

"Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed. *Id.* at 680–81).

Mr. Conner has marshaled no evidence to suggest that Defendants were aware of his prior grievances, and Defendants have testified that they were not aware. *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999) ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech."). Reciting the evidence in the light most favorable to Mr. Conner and drawing all reasonable inferences in his favor; the Court accepts Mr. Conner's testimony that the Defendants labeled him a "snitch," "rat," and referenced his suicide watch status and that these comments were in relation to his grievances. But being placed on suicide watch status is not a protected First Amendment activity—it is a health matter. And being called "snitch" and "rat" alone, without other context, is insufficient to allow a factfinder to infer that this inappropriate name-calling was due to Mr. Conner's grievance activity.

Even if Defendants were aware of Mr. Conner's grievances, the last grievance he filed before August 12 was filed five months prior on April 15, 2023. (Dkt. 47-18 at 2). The Seventh Circuit has repeatedly held that a gap in time between a protected activity and an adverse action this large is insufficient to support a causal connection for a retaliation claim. *See, e.g., Longstreet v. Ill. Dep't. of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (holding that even had plaintiff shown an adverse action, a four-month proximity was insufficient to establish a causal connection); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir.2000) (holding that a three-month gap alone could not reasonably support a causal connection for a retaliation claim); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (more than five weeks between protected activity and adverse action insufficient).

Most of Mr. Conner's response in opposition to summary judgment is an accumulation of case law without application to his claims. (Dkt. 56 at 2-7). Mr. Conner then raises factual disputes, and argues that Defendants violated IDOC policy by not reporting the battery of Duff spitting on

him. *Id*. at 8-11. However, Mr. Conner is not proceeding on any such claims. Additionally, a violation of IDOC policy does not amount to a constitutional violation. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of ... departmental regulation and ... practices[.]") (internal quotation omitted).

Even if Mr. Conner was able to establish the elements of a retaliation claim, the Defendants have met their burden of showing that the alleged harm would have occurred regardless of Mr. Conner's grievances. If the plaintiff is able to establish the elements of a retaliation claim, "'the burden shifts to the defendant to show that the harm would have occurred anyway.'" *Hawkins v. Mitchell*, 756 F.3d 983, 996 n.10 (7th Cir. 2014) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012) (cleaned up)). "And if the defendant does this, "the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus."" *Id*. (quoting *Thayer*, 705 F.3d at 252).

Mr. Conner's move to disciplinary status housing and property transfer would have occurred regardless of his grievance history. It is undisputed that Mr. Conner was moved by non-defendant first responders to a different unit after the altercation with Mr. Duff, and that Sgt. Surguy packed up his property in response.

In addition, Mr. Conner only provides speculation that other inmates were present to remove his property before it was packaged by Defendants. *See FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.") (cleaned up). Mr. Conner was not present when the property was packed up, and Defendants testified that they secured the cell while they inventoried and packaged the property. (Dkt.47-1 at 3, 5; Dkt. 47-2 at 3-6; Dkt. 47-4 at 29).

Mr. Conner is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* He has failed to do so. Therefore, Sgt. Surguy and Officer Brohan are entitled to summary judgment on the First Amendment claims.

**B. Negligence**

With Mr. Conner's constitutional claims staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law negligence claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d

505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Mr. Conner's state-law claims.

The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

The Court has not expended significant resources on the pending state-law claims. The Court does not expect that the parties' discovery and briefing efforts with respect to the state law claims will go to waste. Rather, the evidence and legal research they have uncovered should be equally relevant in Mr. Conner's state-court proceeding. Additionally, comity always favors allowing state courts to decide issues of state law.

Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over Mr. Conner's state law claims.

## III. CONCLUSION

For the reasons stated above, the Defendants' Motion For Summary Judgment, Dkt. [46] is **GRANTED**. Mr. Connor's First Amendment Claim is **dismissed with prejudice**, and his state-law negligence claims are **dismissed without prejudice**.

Final judgment will be issued in a separate entry.

**IT IS SO ORDERED.**

Date: November 16, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

ROBERT CONNER
3424 147th Street
Midlothian, IL 60445

Malcolm Atta Acheampong
Office of Indiana Attorney General
malcolm.acheampong@atg.in.gov

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov